IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

VINCENT HAWKINS AND TAMMY   :
HAWKINS,   :
  :
    Plaintiffs,   :
  :
v.   :   CIVIL ACTION
  :   NO. 2:10-CV-00268-WCO
COTTRELL, INC.,   :
  :
    Defendant.   :

## ORDER

The captioned case is before the court for consideration of plaintiff's "Motion to Remand" [6].

### I.     Factual and Procedural Background

This case was originally filed on December 9, 2010, in Hall County Superior Court, docketed as case number 2010-CV-4162A. The complaint alleged that plaintiff Vincent Hawkins had suffered a number of permanent injuries caused by the defective design of defendant's car haulers. Additionally, plaintiffs asserted a loss of consortium claim and a punitive damages claim. The complaint did not plead a specified amount of damages.

On December 14, 2010, defendant filed a notice of removal in this court seeking to remove the action based on diversity of citizenship. At the time of removal,

defendant had not yet been served in the state action.[1]  Plaintiffs are both Tennessee residents and defendant is a Georgia corporation with its principal place of business located in Hall County, Georgia.  Thus, defendant is a forum defendant, a resident of the state where the action was filed.  Defendant also contended that the $75,000 amount in controversy requirement was met.

Plaintiffs filed the pending motion to remand on January 11, 2011, arguing that removal was improper for two reasons.  First, plaintiffs claim a forum defendant is never entitled to remove an action based on diversity of citizenship.  Plaintiffs also contend that defendant has not met its burden of establishing the amount in controversy.

## II.  Removal by an Unserved Forum Defendant

Under the current removal statute, 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants,  to the district court of the United States for the district and division embracing the place where such action is pending."  *Id.*  A federal court has subject-matter jurisdiction over a diversity

---

[1] Service under Georgia law requires delivery of a copy of the summons and a copy of the complaint to a party.  O.C.G.A. § 9-11-4(e).  With respect to a corporate defendant incorporated under the laws of Georgia, the summons and complaint should be delivered "to the president or other officer of the corporation, secretary, cashier, managing agent, or other agent" of that corporation.  *Id.* at § 9-11-4(e)(1).

of citizenship case pursuant to 28 U.S.C. § 1332, but not every diversity case is removable.  A non-federal question case "shall be removable only if none of the parties in interest properly joined and *served* as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)  (emphasis added).[2]  The application of this rule, the so-called "forum defendant" restriction, is the subject of this litigation.[3]

## A.     The Rules of Statutory Construction

Defendant contends that the forum defendant rule contained in § 1441(b) only applies if the forum defendant has been both joined *and* served.  Until both of these conditions are satisfied, defendant claims that the plain meaning of the statutory text

---

[2] The full text of 28 U.S.C. § 1441(b) provides that:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

*Id.*

[3] The Eleventh Circuit and the majority of the federal courts of appeal have held that the forum defendant rule is *not* a limitation on the subject matter jurisdiction of the district court. *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1258 (11th Cir. 1999);  *see also Hurley v. Motor Coach Indus.,* 222 F.3d 377, 379 (7th Cir. 2000) ("The overwhelming weight of authority, however, is on the 'nonjurisdictional' side of the debate.").  The forum defendant rule is instead a statutory impediment to the exercise of jurisdiction.  If not raised within 30 days of removal it is considered waived under 28 U.S.C. § 1447(b).  *Snapper, Inc.,* 171 F.3d at 1258.  Plaintiff timely raised the issue in this matter.

3

permits a forum defendant to remove an action based on diversity of citizenship. Plaintiffs do not directly assert that the statute is ambiguous, and apparently concede that the plain meaning favors defendant's interpretation. Plaintiffs argue that remand is appropriate because defendant's reading of the statute produces absurd results.

This disagreement turns on statutory construction. "The first rule in statutory construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to that particular dispute.'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003) (quoting *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002), *cert. denied*, 537 U.S. 1112 (2003)). A court must not "start from the premise that [the statutory] language is imprecise" but must instead "assume that in drafting legislation, Congress said what it meant." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (quotation omitted).

The Eleventh Circuit has emphasized that "[w]hen the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc). As the Supreme Court has "repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah*

4

*Servs.,* 545 U.S. 546, 568 (2005).[4]  For this reason, "ambiguity in statutory language [must] be shown *before* a court delves into legislative history."  *CBS*, 245 F.3d at 1224 (emphasis original).

The court's inquiry is thus initially limited to determining a statute's plain meaning.[5]  If the statute's plain meaning is clear, the court is bound to give effect to its language.  Occasionally, however, a statute may be unclear or imprecise, making its plain meaning difficult to discern.  "[W]here the statutory language is not entirely transparent," a court must turn to the other "tools at its disposal," namely "the canons of construction." *CBS*, 245 F.3d at 1225.

---

[4] The problems with relying on legislative history were explained by the Supreme Court in the same opinion:

> First, legislative history is itself often murky, ambiguous, and contradictory.  Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in "'looking over a crowd and picking out your friends.'" *See* Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L. Rev. 195, 214 (1983).  Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members–or, worse yet, unelected staffers and lobbyists–both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

*Exxon Mobil Corp.,* 545 U.S. at 568-69.

[5] To determine the "common usage or ordinary meaning of a term," a court often refers to a dictionary.  *CBS*, 245 F.3d at 1223.

The traditional canons of construction include several principles applicable here. A court does "not look at one word or one provision [of a statute] in isolation, but rather look[s] to the statutory scheme for clarification and contextual reference." *United States v. McLemore*, 28 F.3d 1160, 1162 (11th Cir. 1994) (citing *Smith v. United States*, 508 U.S. 223, 233 (1993)). "Statutory construction . . . is a holistic endeavor" and "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ." *United Sav. Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988). Additionally, "[a] statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage." *United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) (quotation omitted).

A court is permitted to look beyond the plain meaning of a statute to extrinsic materials in only two circumstances: (1) the statute's language is ambiguous; or (2) applying the statute's plain meaning would lead to an absurd result. *Id.* at 1281.[6] The

_____

[6] Although the panel opinion in *DBB Incorporated* also stated that a court could look beyond the plain language of a statute to extrinsic materials if there was "clear evidence of contrary legislative intent," this statement is in tension with the purpose of the plain meaning rule. *DBB*, 180 F.3d at 1281. If a statute's meaning is plain, there is no need to look to legislative intent, period. Allowing clear legislative intent to override the plain meaning of a statute undermines this rule by implicitly assuming that legislative history will be referenced even when a statute is not ambiguous. The Eleventh Circuit has noted this inconsistency: "[s]uch an exception would have serious rule-swallowing potential because it would require that legislative history always be considered in order to determine whether there was 'clear evidence of contrary legislative intent.'" *CBS*, 245 F.3d at 1227 (quoting *DBB*, 180 F.3d at 1281). For this reason, the *CBS* panel indicated that "the third listed exception" from *DBB* was "merely dicta" and was "contrary to the law of this Circuit." *Id.*

first of these circumstances, ambiguity in the statute's language, "is really just a restatement of the plainness requirement of the plain meaning rule." *CBS*, 245 F.3d at 1227.  In other words, "[i]f the statutory language is ambiguous, its meaning is not plain." *Id.*

The second exception, known as the "absurd results" doctrine, applies when "giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997).  For this exception to apply, however, the result produced must be "truly absurd."   *Id*.   This limitation ensures that use of this doctrine is rare. Otherwise,  "clearly expressed legislative decisions" are at risk of being replaced by "the policy predilections of judges."  *Id.*[7]

### B.   Relevant Decisions of Other Courts

There is no Eleventh Circuit decision that addresses whether § 1441(b) permits an unserved forum defendant to remove a case based on diversity of citizenship.

---

[7] The "absurd result" doctrine set forth by the Eleventh Circuit is also recognized by the Supreme Court.   According to Justice Scalia, when a court is faced with a statute which, if interpreted literally, would produce an absurd result, the court's task is "to give some alternative meaning to the [statutory language] that avoids this consequence."  *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 527 (1989) (Scalia, J., concurring).   To determine this alternative meaning, it is "entirely appropriate to consult all public materials, including the background of [the rule or statute] and the legislative history of its adoption, to verify that what seems to us an unthinkable disposition . . . was indeed unthought of, and thus to justify a departure from the ordinary meaning of the [words in the rule or statute]."  *Id.*

Similarly, no persuasive authority exists in any other federal circuit court of appeals. This dearth of authority is the result of the restriction on appellate review of remand orders contained in 28 U.S.C. § 1447(d). *Holmstrom v. Peterson*, 492 F.3d 833, 835-36 (7th Cir. 2007).[8]

The lack of appellate opinions obscures the fact that the federal district courts have been inundated with a flood of cases addressing this issue, although this is apparently the first such case in the Northern District of Georgia. The courts faced with this question have reached differing results. Due to the divergent authority and because this is an issue of first impression in this district, the court will undertake a comprehensive analysis.

The split of authority broadly parallels the parties' respective positions. The cases adopting defendant's general argument hold that the text of the removal statute is not ambiguous. Since there is no ambiguity, there is no need to resort to the legislative history. The plain meaning of the statute permits an unserved forum defendant to remove an action based on diversity. Moreover, this result is not absurd.

An exemplar of a decision in this vein is *Yocham v. Novartis Pharmaceuticals Corp.*, No. 07-1810-JBS, 2007 WL 2318493, at *1-2 (D.N.J. Aug. 13, 2007), which

---

[8] The only exception, inapplicable here, is when a district court remands a civil rights case removed under 28 U.S.C. § 1443.

is factually analogous to this case.   In *Yocham*, a Texas plaintiff filed suit against a New Jersey defendant in New Jersey superior court.  Prior to service, the New Jersey defendant filed a notice of removal premised on diversity.  The district court ruled that the case was properly removed.

As support for this conclusion, the *Yocham* court cited several other opinions from the District of New Jersey.  *See Thompson v. Novartis Pharms. Corp.*, No. 06-6280-JBS, 2007 U.S. Dist. LEXIS 37990, at *15 (D.N.J. May 22, 2007) (Simandle, J.) (allowing removal by a forum defendant where all defendants were unserved New Jersey residents and plaintiffs were Georgia residents);  *Frick v. Novartis Pharms. Corp.*, No. 05-5429-DRD, 2006 U.S. Dist. LEXIS 9178, at *6-7 (D.N.J. Feb. 22, 2006) (Debevoise, J.) (relying on "literal language of the statute" to allow removal by single unserved forum defendant).[9]   The conclusion of all three decisions is that § 1441(b) is not ambiguous.  The statute's plain meaning prevents removal by a forum defendant only when that defendant "has been 'properly joined *and served*.'" *Yocham*, 2007 WL 2318493 at *3 (quoting 28 U.S.C. § 1441(b))   (emphasis original). Permitting removal prior to service is not "demonstrably at odds" with Congressional

---

[9] The court's typical practice is to provide electronic citations to the Westlaw database, but neither of these unpublished orders are contained within that database.  Therefore, for ease of reference, the court has provided the relevant citations to the Lexis-Nexis database.

intent and does not create "such a 'bizarre' outcome that Congress could not have intended it." *Thompson*, 2007 U.S. Dist. LEXIS 37990 at *15 (quotation omitted).[10]

The cases supporting plaintiffs' position examine the legislative intent behind the removal statute, either because the statute is ambiguous or its plain meaning creates absurd results. Based on the legislative history, these courts hold that § 1441(b) was intended to prevent removal by a forum defendant, regardless of whether that defendant has been served. One case demonstrating this reasoning also originated in the District of New Jersey. In *DeAngelo-Shuayto v. Organon USA, Inc.*, No. 07-2923-SRC, 2007 WL 4365311, at *4 (D.N.J. Dec. 12, 2007) (Chesler, J.), the court agreed that the plain meaning of § 1441(b) implied that a forum defendant could remove an action prior to service. However, where "the forum defendant is the removing party, and clearly a legitimate defendant, there is no reason to ignore the forum defendant rule and permit removal, regardless of whether or not the removing defendant has been served." *Id.* This would create "a bizarre result [that] cannot possibly have been the intent of the legislature." *Id.* Similarly, the court in *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007), believed that allowing an

---

[10] General support for this approach can be found in several other opinions. A magistrate judge's opinion from the Eastern District of Missouri held that "[t]he text of § 1441(b) . . . is clear" and applied "the statute as it is written." *Terry v. J.D. Streett & Co.,* No. 4:09-CV-01471-FRB, 2010 WL 3829201, at *2 (E.D. Mo. Sept. 23, 2010). Thus, an unserved forum defendant was allowed to remove a diversity action.

unserved forum defendant to remove a diversity action would "frustrate the consistent efforts of both Congress and the courts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy."  *Id.*  Such a construction would "provide a vehicle for defendants to manipulate the operation of the removal statutes."  *Id.*  This approach appears to be the majority view.  *See, e.g. Ibarra v. Protective Life Ins. Co.*, No. CV-09-049-TUC-CKJ, 2009 WL 1651292, at *3-4 (D. Ariz. June 12, 2009) (remanding case because allowing removal by a forum defendant would be at odds with the purpose of the removal statute and would produce absurd results); *Ethington v. Gen. Elec. Co.*, 575 F. Supp. 2d 855, 864 (N.D. Ohio 2008) (indicating that "applying plain language of § 1441(b) would produce a result demonstrably at odds with Congressional intent underpinning the forum defendant rule").

Defendant also claims that a third type of case supports its argument for allowing removal.  These cases all involve at least two defendants, including at least one out-of-state defendant and at least one forum defendant.  The out-of-state defendant is permitted to remove the action based on diversity, so long as no forum defendant had been served at the time of removal.  *See, e.g., Gibson v. Wal-Mart Stores East, LP, et al.*, No. 5:09-CV-228-HL, 2010 WL 419393, at *1 (M.D. Ga. Jan. 28, 2010) (allowing out-of-state defendant to remove action based on diversity because forum defendant had not yet been served). These opinions often rely on the

plain meaning of § 1441(b) to hold that "the resident defendant [must] be 'properly joined and served' [in order] to defeat removal." *Masterson v. Apotex, Corp.*, No. 07-61665-CIV, 2008 WL 2047979, at *2 (S.D. Fla. May 13, 2008) (quoting 28 U.S.C. § 1441(b)).  However, in all of these cases, the removing defendant is the out-of-state defendant, not the forum defendant.

### C.    Statutory Construction

Most courts addressing this issue, on either side of the split of authority, have simply agreed without much discussion "[t]hat the literal application of § 1441(b)" favors defendant's position. *Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 643 (D.N.J. 2008).  In other words, they have conceded that the plain meaning of the second sentence of § 1441(b) allows an unserved forum defendant to remove an action based on diversity of citizenship.  However, looking "to the statutory scheme for clarification and contextual reference, " the court is not convinced that the plain meaning of the statute, augmented by the application of the canons of construction, actually supports this result. *McLemore*, 28 F.3d at 1162 (11th Cir. 1994) (quotation omitted).

First, the court questions whether the "joined and served" language applies when no defendant has been properly joined and served.  The statute states that removal in a diversity case is permitted "only when none of the parties in interest

12

properly joined and served as defendants is a citizen of the State in which such action is brought."  The "none" in that statement refers to the "parties in interest properly joined and served," which implies that there is at least one defendant that is a party in interest that has been properly joined and served.  Otherwise, it makes no sense to examine whether "none" of these parties is "a citizen of the State in which such action is brought."  In such a situation, the "none" would be superfluous because where no parties are served, it would be impossible for any party "joined and served" to be a "citizen of the State in which such action is brought."  Since "[a] statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage," the plain meaning of the statute contemplates a situation where at least one defendant has been joined and served.  *DBB*, 180 F.3d at 1285 (quotation omitted).[11]

Applying the plain meaning of the statute to this case, the court must examine whether any of the parties in interest properly joined and served is a citizen of the state

---

[11] The court's reading of the statute is apparently unique, although one other court has come to a slightly similar conclusion.  In *Allen v. GlaxoSmithKline PLC*, No. 07-5045, 2008 WL 2247067, at *5 (E.D. Pa. May 30, 2008), the court held that the "joined and served" language of § 1441(b) "contemplates a situation in which one defendant is joined to another defendant, presumably an in-state defendant joined to an out-of-state defendant" because the word "joined" was used, rather than some other term like "named."  Therefore, "[t]he 'joined and served' language" could "only apply when there are multiple, named defendants" and a single unserved forum defendant could not remove a case under § 1441(b).  *Id.*

in which the action is brought. Since there is only one defendant, there is no question of fraudulent joinder. It is clear that defendant is properly joined. However, there is no party in interest in this action that has been properly served. This makes removal in this matter is improper, because the court is unable to adequately complete the inquiry required under § 1441(b).[12]

This reading of the statute necessarily restricts removal to cases where at least one defendant has been served. Several district courts have reached a similar conclusion, albeit under slightly different reasoning. In *Holmstrom v. Harad*, No. 05-C-2714, 2005 WL 1950672, at *1 (N.D. Ill. Aug. 11, 2005), an out-of-state defendant sought to remove an action based on diversity before service was effected upon it or any of the other forum defendants. The court found that the "'joined and served' requirement makes sense" only "when one [out-of-state] defendant has been served but the named forum defendant has not" and remanded the case because no party had been served prior to removal. *Id.* at *2; *see also Recognition Comms., Inc. v. Am. Auto. Ass'n,* No. 3:97-CV-0945-P, 1998 WL 119528, at *3 (N.D. Tex. Mar. 5, 1998) (holding that action that included out-of-state defendant and forum defendant could

---

[12] If defendant had been served, then there would have been at least one party in interest that was joined and served, and the court would then proceed to ask whether "none" of the parties in interest were residents of the state where the suit was brought. At this point, the forum defendant rule would be applied to bar removal by defendant, because defendant is a resident of the state where the suit was brought.

14

not be removed by out-of-state defendant prior to service upon any defendant due to language of § 1441(b)).

The conclusion that service is required prior to removal is further buttressed by the Supreme Court's decision in *Murphy Brothers, Inc., v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). In *Murphy Brothers*, the Court interpreted a different provision of the removal statute, 28 U.S.C. § 1446(b), which provides that a notice of removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief" or "within thirty days after the service of the summons upon the defendant if such initial pleading has then been filed in court." *Murphy Bros.*, 526 U.S. at 356. The plaintiff in *Murphy Brothers* had faxed a courtesy copy of the complaint to the defendant 14 days before service of process was effected. The defendant removed the action 30 days after service, but 44 days after receiving the faxed copy of the complaint. The Supreme Court held that the removal was timely, because the time to remove did not begin to run until plaintiff had both been served with process *and* received a copy of the complaint. *Id.* at 348.

First, the Court noted that service of process was "fundamental to any procedural imposition on a named defendant." *Id.* at 350. The Court explained that the modifications made to § 1446(b) in 1949 did not "dispense with the historic

function of service of process as the official trigger for responsive action by an individual or entity named defendant." *Id.* at 353. Thus, "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' *after* and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347-48 (emphasis added).

Although *Murphy Brothers* did not directly address whether service was required before a defendant could remove an action, the Court indicated that the time to remove was "triggered" in all instances *after* the receipt of service of process. It thus seems safe to assume that service on at least one defendant is required prior to removal. Without service upon any defendant, no party has been "brought under a court's authority" through "formal process." *Id.* at 347. Additionally, allowing removal prior to service renders the time limit on removal contained within § 1446(b) superfluous. If removal can be effected prior to service, it makes no sense for the removal deadline to begin to run after service of process.

Moreover, the Court implicitly assumed that service of process would *always* occur prior to removal. *See id.* at 354 (assuming that service of at least the summons would precede removal in all four possibilities under the statute while stating that "in each of the four categories, the defendant's period for removal will be no less than 30

days *from* service") (emphasis added); *see also West v. Aurora City*, 73 U.S. 139, 142

(1867) (noting that a suit was removable from a state court only if "process [was]

served upon a defendant"). The only reason removal is even possible prior to service

is due to the advent of electronic case filing and waiver of service rules that could not

have been foreseen when the current removal statute was enacted. *See Murphy Bros.,*

526 U.S. at 353 n.5 (noting that Congress did not intend to allow removal prior to

service of the summons even though the defendant had received an electronic copy

of the complaint via fax because "it is evident . . . that Congress could not have

foreseen the situation posed by this case" as there were no facsimile transmissions in

1949).[13]

---

[13] The court in *Hutchins v. Bayer Corp.*, No. 08-640-JFF-LPS, 2009 WL 192468, at *6 (D. Del. Jan. 23, 2009), expressly disagrees that service is required prior to removal. That court stated that "the removal statutes expressly permit defendants to remove state court actions to federal court prior to service." *Id.* The *Hutchins* court based that conclusion on 28 U.S.C. § 1446(b), which requires a notice of removal to be "filed within thirty days after the receipt by the defendant through service or otherwise, of a copy of the initial pleading."

The reasoning of the *Hutchins* court is not persuasive. The *Hutchins* court arrives at its conclusion by emphasizing that the word "otherwise" indicates that service is not required prior to removal. But, this emphasis is at odds with the Supreme Court's decision in *Murray Brothers*. Under the *Hutchins* court's interpretation, since an action may be removed upon receipt of the complaint, the time to remove would necessarily begin when a defendant received the complaint, regardless of service. This result, however, would be directly at odds with the rule in *Murphy Brothers,* which held that the mere receipt of a complaint, without service, does *not* commence the removal period. As explained by the Court, the "or otherwise" language was added to the statute in 1949 because in some states, "service of the summons commenced the action and such service could precede the filing of the complaint." *Murphy Bros.,* 526 U.S. at 351. In those states, "the period for removal . . . could have expired *before* the defendant obtained access to the complaint." *Id.* (emphasis original). The addition of the "or otherwise" language was intended to "accommodate atypical state commencement and complaint filing procedures"and was not "intended to dispense with the historic function of service of process as the official trigger for responsive action by an

Another point arguably confirms the court's conclusion that the removal statute requires service prior to removal, at least in the state of Georgia. The removal statute states that an action must be "pending" in a state court before it may be removed. *See* 28 U.S.C. § 1441(a) (noting that civil action may be removed to the district court "embracing the place where such action is pending"); 28 U.S.C. § 1442(a) (noting that civil or criminal action may be removed to district court "embracing the place wherein it is pending"); 28 U.S.C. § 1443 (similar to language of § 1442(a)). The court has not located any federal case interpreting the meaning of the word "pending" in these statutes. According to Black's Law Dictionary, the word pending means "remaining undecided" or "awaiting decision." BLACK'S LAW DICTIONARY 1154 (7th ed. 1999). In the court's view, an action must have "commenced" before it can be "pending."

According to federal law, an action is commenced when a complaint is filed with the court. FED. R. CIV. P. 3. However, the plain meaning of the statute seems to require that the action be "pending" in *state* court at the time of removal. Even though the interpretation of a federal statute is a matter of federal law, a determination of whether the action was pending in a Georgia court at the time of removal requires reference to Georgia law. Under Georgia law, unlike federal law, "there is a

---

individual or entity named defendant." *Id.* at 353. Most importantly, the Supreme Court expressly rejected a "receipt rule" whereby the time for service would begin to run upon receipt of the copy of the complaint, even if the complaint was not received through formal service. *Id.* at 356.

substantial difference between the commencement of an action and its being a suit pending between the parties." *McClendon v. Hernando Phosphate Co.*, 28 S.E. 152, 153 (Ga. 1897).  Georgia's modern Civil Practice Act preserves this distinction, as filing a suit "is still not the commencement of suit unless followed by service within a reasonable time." *Franek v. Ray*, 236 S.E.2d 629,  632 (Ga. 1977).  Thus, under Georgia law, "an action is not a 'pending' suit until after service of process is perfected." *Steve A. Martin Agency, Inc. v. PlantersFIRST Corp.*, 678 S.E.2d 186, 188 (Ga. Ct. App. 2009); *see also Jenkins v. Crea*, 656 S.E.2d 849, 850 (Ga. Ct. App. 2008) ("An action is not a pending suit until service is perfected.").  Since an action is not pending in a Georgia court before service, the text of the removal statute arguably prevents removal prior to service on at least one defendant

The statute's text is therefore not ambiguous, and under its plain meaning defendant was not permitted to remove this action.  Remand is therefore required.  A number of courts, however, have disagreed with the court's conclusion that the statute is not ambiguous.  The court will thus assume, for purposes of argument, that the statute's plain meaning allows removal by an unserved forum defendant.  But, even under this assumption, removal is still required, because adopting this meaning would create absurd results.

First, there is no conceivable reason why Congress would condition a forum defendant's ability to remove a diversity case on the timing of service. The original purpose of diversity jurisdiction was "based on the desire of the Framers to assure out-of-state litigants courts free from susceptibility to potential local bias." *Lumberman's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54 (1954) (Frankfurter, J., concurring). The justification for the forum defendant rule reflects the converse of this proposition. Since a defendant has no risk of suffering even presumptive local prejudice in a state court located in his or her home state, there is no reason to provide that defendant the option of a federal forum. Given this rationale, it is absurd to claim that there is a principled distinction between a served and unserved forum defendant for purposes of removal. In each case, the defendant is not an out-of-state litigant, and thus in each case the justification for providing a federal forum is equally weak. An unserved forum defendant is not somehow subject to more presumptive local prejudice than a served forum defendant, and thus it makes no sense to grant the former a federal tribunal while forcing the latter to stay in state court.

Additionally, defendant's reading is ridiculous when placed in the broader context of federal jurisdiction. The forum defendant rule prevents the removal of cases that otherwise satisfy the demands of federal subject matter jurisdiction. In enacting this rule, therefore, Congress intentionally created a scheme whereby a plaintiff could

select its own forum, except when that forum was presumptively prejudicial to the defendant.  If a plaintiff chose to file a case in federal court or in the home-state courts of the defendant, there would be no risk of presumptive prejudice to the defendant, and the plaintiff's forum choice would be honored.  A federal forum would be available only if the plaintiff forced the defendant to defend a suit in a presumptively prejudicial forum.  To credit defendant's reading would upset this delicate balance between the competing forum preferences of plaintiffs and defendants.  Thus, since defendant's interpretation of the statute produces an absurd result, it is "entirely appropriate to consult all public materials, including the background of [the rule or statute] and the legislative history of its adoption, to verify that what seems to [the court] an unthinkable disposition  .  .  .  was indeed unthought of, and thus to justify a departure from the ordinary meaning of the [words in the statute]." *Green*, 490 U.S. at 527 (Scalia, J., concurring).

Prior to doing so, however, the court will note a final flaw in defendant's argument and the reasoning of the courts that have adopted it.  Many courts allowing removal by an unserved defendant relied on decisions where an out-of-state defendant was permitted to remove an action prior to service upon the forum defendant.  This ignores the difference between removal by an out-of-state defendant and removal by a forum defendant.  For example, in *Yovartis*, the only out-of-district authorities cited

21

as support were cases holding that an out-of-state defendant could remove an action

if a forum defendant had not yet been served.  *See Stan Winson Creatures, Inc. v. Toys*

*"R" Us, Inc.,* 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) (remanding case  that out-of-

state defendant had sought to remove based on diversity because forum defendant had

already been served at the time of removal); *Ott v. Consolidated Freightways Corp.*,

213 F. Supp. 2d 662, 665 (S.D. Miss. 2002) (allowing out-of-state defendant to

remove action because forum defendant had not been served at the time of removal).[14]

The problem is that removal by a forum defendant is easily distinguishable from

removal by an out-of-state defendant.  *Accord Allen*, 2008 WL 2247067, at *5 (noting

that case where out-of-state defendant removed prior to service on forum defendant

was "distinguishable" from case where forum defendant removed prior to service).

Allowing removal by an out-of-state defendant when a forum defendant is unserved

---

[14] The same flaw is repeated in the *Terry* court's decision. *See Terry*, 2010 WL 2829201, at *2 (citing cases allowing removal by an out-of-state defendant when forum defendant had not been served).  All of the cited supporting decisions involved both an out-of-state defendant and a forum defendant who had not yet been served; the decisions allowed removal by the *out-of-state* defendant, not the forum defendant.  *See Taylor v. Cottrell, Inc.*, No. 4:09-CV-536-HEA, 2009 WL 1657427, at *2 (E.D. Mo. June 10, 2009) (holding that removal by out-of-state defendant was proper when forum defendant had not yet been served at the time of removal); *Brake v. Reser's Fine Foods, Inc.*, No. 4:08-CV-1879-JCH, 2009 WL 213013, at *3 (E.D. Mo. Jan. 28, 2009) (holding that naming but not serving forum defendant did not prevent out-of-state defendant from removing action); *Johnson v. Precision Airmotive, LLC*, No. 4:07-CV-1695-CDP, 2007 WL 4289656, at *3-4 (E.D. Mo. Dec. 4, 2007) (holding that removal by out-of-state defendant was proper because no forum defendant had been served at the time of removal).
.

does not defeat the forum defendant rule and thus does not necessarily lead to an absurd result.  Conversely, allowing an unserved forum defendant to remove a diversity action clearly defeats the purpose of the forum defendant rule because it enables a resident defendant, who would not be subject to presumptive local prejudice in the state courts, to obtain a federal forum.  This totally eviscerates the forum defendant rule and leads to an absurd result, because it undermines the rationale for having a forum defendant rule at all.

## D.   The Legislative History of the Removal Statute

The purpose of the forum defendant rule in the removal statute can only be understood in relation to the purpose of diversity jurisdiction.  Article III, Section 2, Clause 1 of the United States Constitution provides that the judicial power of the United States shall extend to controversies "between citizens of different States." U.S. CONST. art. III, § 2, cl. 1.  "The effect of these provisions is not to vest jurisdiction in the inferior [federal] courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 233-34 (1922).  In other words, the Constitution grants federal courts the ability, but not the right, to hear controversies between citizens of different states, and Congress has the discretion to confer or take away that jurisdiction in whole or in part.  *Id.* at 234.

23

The very first Congress bestowed upon the inferior federal courts the power to hear cases between citizens of different states and that power has continued with slight modifications up to the present day.  The original diversity of citizenship statute was contained in Section 11 of the Judiciary Act of 1789.  This provision stated that the circuit courts of the United States "shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, where . . . the suit is between a citizen of the State where the suit is brought, and a citizen of another State." Judiciary Act of 1789, ch. 20, 1 Stat. 78 (1789).

The rationale behind diversity jurisdiction was the fear that state courts would potentially exhibit local prejudice towards defendants who were citizens of a different state. As explained in the Federalist Papers, a federal tribunal was necessary to hear controversies between citizens of different states in order to prevent any possibility of local bias:

> It may be esteemed the basis of the Union, that 'the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several states.'  And if it be a just principle that every government *ought to possess the means of executing its own provisions by its own authority*, it will follow, that in order to the inviolable maintenance of that equality of privileges and immunities to which the citizens of the Union will be entitled, the national judiciary ought to preside in all cases in which one State or its citizens are opposed to another State or its citizens.  To secure the full effect of so fundamental a provision against all evasion and subterfuge, it is necessary that its construction should be committed to that tribunal which, having no local attachments, will be

likely to be impartial between the different States and their citizens, and which, owing its official existence to the Union, will never be likely to feel any bias inauspicious to the principles on which it is founded.

THE FEDERALIST NO. 80, at 231 (Alexander Hamilton) (2010) (emphasis original). Thus, as Chief Justice Marshall noted, although it may be true that "the tribunals of the states will administer justice as impartially as those of the nation," it was "not less true that the constitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and apprehensions of suitors,  that it has established national tribunals for the decision of controversies . . . between citizens of different states." *Bank of the United States v. Deveaux*, 5 Cranch 61, 87 (U.S. 1809).

The fear of potential local prejudice inherent in the concept of diversity jurisdiction was also the impetus behind the development of the removal statute. Without a removal statute, a plaintiff could initiate a suit in the courts of his or her home state against an out-of-state defendant, and thus potentially subject that out-of-state defendant to "local prejudice."  To prevent this result, the Judiciary Act of 1789 also included the original removal statute:

Sec. 12.  *And be it further enacted*, That if a suit be commenced in any state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state, and the matter in dispute exceeds the aforesaid sum or value of five hundred dollars . . . and the defendant shall, at the time of entering his appearance in such state court,

> file a petition for the removal of the cause for trial into the next circuit
> court, to be held in the district where the suit is pending . . . in such
> court of the United States, the cause shall there proceed in the same
> manner as if it had been brought there by original process.

Judiciary Act of 1789, ch. 20, 1. Stat. 79.  This statute implicitly included the forum

defendant restriction because removal was only permitted when a plaintiff initiated

a suit in his or her home state against an out-of-state defendant.  A defendant sued in

the courts of his or her home state would thus never be entitled to remove.  *See West*,

73 U.S. at 142 ("A suit removable from a State court must be a suit regularly

commenced by a citizen of the State in which the suit is brought, by process served

upon a defendant who is a citizen of another State").

The "joined and served language" was added to the removal statute in 1948. In

the intervening period between the Judiciary Act of 1789 and the 1948 changes, the

removal statute was modified several times.  However, the Supreme Court never held

throughout that period that a defendant sued in the state courts of its home state was

entitled to remove a diversity action.  Indeed, after changes to the removal statute in

1866, the Supreme Court expressly rejected this very argument. In the Court's view,

the 1866 changes did not "purport to confer" a right to removal on a resident

defendant in a diversity case.  *Case of Sewing Mach. Co.*, 85 U.S.  553, 586 (1873).

The Court believed that "it is a great mistake to suppose that any such right [to

26

remove] is conferred by the [amended removal statute] where one or more of the plaintiffs or one or more of the petitioning defendants [seeking removal] are citizens of the State in which the suit is pending, as the act is destitute of any language which can be properly construed to confer any such right unless all the plaintiffs or all the defendants are non-residents and join in the [removal] petition." *Id.* at 587; *accord Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 469 (1894) (Harlan, J., dissenting) (noting that the "main purpose" of the forum defendant limitation was "to restrict the right of removal" to defendants who were nonresidents of the forum state).

The reason behind the addition of the joined and served language is not clear from the legislative history.  The Senate Committee Report provides no guidance because it does not mention the revisions to § 1441 at all.  S. REP. NO. 80-1559, at 1-16 (1948).  The House Committee Report states only that the revised § 1441 was intended to consolidate earlier removal provisions, "resolve ambiguities and conflicts of decisions," and simplify the removal procedures.  H.R. REP. NO. 80-308, at A133 (1947).

There were several different statutory provisions that dealt with removal prior to the 1948 revisions. The only portion relevant to the present issue provided as follows:

Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the district courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being *non-residents of that State.* And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district. And where a suit is now pending, or may hereafter be brought, in any State court, in which there is a controversy between a citizen of the State in which the suit is brought and a citizen of another State, any defendant, *being such citizen of another State*, may remove such suit into the district court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to said district court that from prejudice or local influence he will not be able to obtain justice in such State court.

Judiciary Act of 1911, ch. 231, 36 Stat. 1094-95 (emphasis added).

Thus, the pre-1948 removal statute allowed removal in three circumstances: (1) in all cases arising under federal statutory or constitutional law (federal question jurisdiction); (2) in cases that satisfied diversity jurisdiction, provided that all of the defendants were non-residents of the State (the forum defendant rule); and (3) all cases where the defendant was a citizen of another state and where "prejudice or local

influence" would prevent that defendant from receiving "justice" in that state's courts.[15]   The major change in 1948 eliminated the third option, removal for "prejudice or local influence."[16]   The House Committee Report indicates that "[a]ll the provisions with reference to removal of controversies between citizens of different States because of inability, from prejudice or local influence to obtain justice, have been discarded."  H.R. REP. NO. 80-308, at A133.  The Committee stated that these provisions were "born of the bitter, sectional feelings engendered by the Civil War and the Reconstruction Period" and had "no place in the jurisprudence of a nation since united by three wars against foreign powers."  *Id.*

Notably, the text of the pre-1948 removal statute is quite clear that in order to remove a diversity action, all defendants must be non-residents of the forum state.

---

[15] The provision allowing for the removal of a "controversy which is wholly between citizens of different states" was not a separate type of removal, but an addendum to the first two types of removal.  In a case removed under either federal question or diversity jurisdiction, additional non-federal claims between citizens of different states could also be removed.  Congress found this language confusing, however, and the 1948 changes completely modified this section.  *See* H.R. REP. NO. 80-308, at A133 (noting that this section "occasioned much confusion").  Subsection (c) of § 1441 was substituted for this provision.  The modern version of this language states that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed."  28 U.S.C. § 1441(c).  The change thus restricted the removal of additional non-federal claims to situations where the court's federal question jurisdiction was invoked.  Notably, the intention behind this change was to "somewhat decrease the volume of Federal litigation."  H.R. REP. NO. 80-308, at A134.

[16] This provision was originally added in 1866 after the Civil War. *See generally Case of Sewing Mach. Co.*, 85 U.S. 553, 578 (1873).

Since nothing in either of the committee reports suggests that Congress intended to change this requirement with the addition of the joined and served language in 1948, the court will assume that this purpose continued unaltered. Additionally, the 1948 changes further limited the availability of removal by eliminating the "local prejudice" option. Thus, if anything, the changes evidence an intent to *limit* the availability of removal, a purpose that would be at odds with defendant's favored interpretation, which expands the availability of removal beyond its historical bounds.

An examination of congressional committee reports addressing § 1441(b) in the years between 1948 and the present date sheds no additional light on the "joined and served" language. In fact, the only reference whatsoever to the forum defendant rule contained in these reports is a brief reference to the "in-state defendant limitation in subsection (b)." H.R. REP. NO. 100-889, at 42 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 5982, 6002. Thus, legislative history on the purpose behind the joined and served requirement is conspicuously lacking. *Accord Sullivan*, 575 F. Supp.2d at 644 (indicating that after reviewing "all legislative materials available" in the Third Circuit and D.C. Circuit libraries the court was unable to locate "a specific statement from Congress" or the Advisory Committee regarding "the addition of the 'properly joined and served' language.").

Despite this silence, the legislative history does reveal three crucial points. First, from the inception of the removal statute, a forum defendant has *never* been allowed to remove a diversity action.  Secondly, there is no indication that Congress intended to change this long-standing rule with the addition of the "joined and served" language in 1948.  Lastly, there is no suggestion anywhere in the legislative history that Congress intended service upon a forum defendant to affect a forum defendant's ability to remove an action.

Instead, the likely purpose behind the "joined and served" language was "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." *Stan Winston Creatures*, 314 F. Supp. 2d at 181.  The need for this protection was likely caused by the Supreme Court's decision in *Pullman Co. v. Jenkins*, 305 U.S. 534 (1939).  In *Pullman*, a California plaintiff sued several defendants, including a California defendant and an Illinois defendant, in a California state court.  The Illinois defendant, the Pullman Company, sought to remove the case to federal court.  Even though the California defendant had not been served at the time of the removal, the Court remanded the action, holding that the case could not be removed by an out-of-state defendant simply because the "resident defendant has not been served with

process." *Id.* at 540-41. In other words, an unserved resident (forum) defendant could defeat removal by an out-of-state defendant.

The context of *Pullman* was slightly different from this case, because in *Pullman* the forum defendant defeated complete diversity and thus precluded removal altogether. The seeds of the "joined and served" language, however, are contained within *Pullman*. *Pullman*'s holding was broadly construed as requiring the consideration of unserved defendants when determining removability. Therefore, *Pullman* created an opportunity for a plaintiff to join but never serve a forum defendant, either to defeat removal via the forum defendant rule or by destroying complete diversity.

The *Pullman* Court recognized that this rule created the potential for procedural gaming and thus fashioned a "good faith" exception. This exception allowed a non-resident defendant to "show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove." *Id.* at 541. Apparently by 1948, this *Pullman* "good faith" analysis had become unwieldy. Thus, the addition of the "joined and served" language was meant to override the *Pullman* decision and allow an unserved defendant to be ignored when considering whether a case was removable.

Based on its extensive analysis of the purpose behind the removal statute and the forum defendant rule, the court has not discovered "even a snippet of support" for defendant's proposed interpretation of the statute. *Green*, 490 U.S. at 528. The 1948 changes to the removal statute were made to prevent a plaintiff from joining but then never serving a forum defendant, with the purpose of defeating removal. They were not intended to allow a forum defendant who had not been served to remove an action. Such a result contravenes the clear and long-standing history behind the forum defendant rule and undercuts its rationale.

Moreover, the Tenth Amendment reserves to the states the power "to provide for the determination of controversies in their courts" and this right "may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). For this reason, the removal statute must be narrowly construed. *University of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Adopting defendant's interpretation would require the court to ignore sound principles of federalism and force cases that are properly the province of state courts into a federal tribunal. "Due regard for the rightful independence of state governments" therefore requires the court, particularly in light of the extensive history above, to decline to adopt

defendant's interpretation and to observe the historic limits on the removal statute. *Shamrock*, 313 U.S. at 109 (quotation omitted). This action must be remanded.

### III.    Amount-in-Controversy Requirement

Plaintiffs also assert that remand is proper because defendant has failed to meet its burden of demonstrating that the amount in controversy requirement is satisfied. In the complaint, plaintiffs made an unspecified demand for damages.  "If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the  .  .  .  jurisdictional requirement." *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Tapscott v. MS Dealer Serv.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000)).  Since this case was removed within 30 days  of the receipt of service  by the defendant, it falls under the first paragraph of § 1446(b).  Thus, "the removing defendant may present additional evidence–business records and affidavits, for instance–to satisfy its jurisdictional burden." *Roe,* 613 F.3d at 1061 n.4.

However, defendant presented no additional evidence, but instead simply contended that it is "facially apparent" from the complaint itself that the amount incontroversy exceeds the jurisdictional minimum.  Where

a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought.

. . .

Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable. Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount. Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Id.* at 1061-62 (quotations and citations omitted).

Plaintiffs' complaint asserts that Vincent Hawkins "sustained injuries to his right and left shoulders" from the faulty design of defendant's car haulers. (Compl. 2.) Plaintiffs allege that "[t]hese injuries are permanent, and, in the future, Plaintiff [Vincent Hawkins] will suffer medical and other necessary expenses, loss of earning capacity and earnings, and mental and physical pain and suffering." (*Id.* at 5-6.) Thus, plaintiffs seek damages for "medical expenses, lost income and benefits, and mental and physical pain and suffering." (*Id.* at 5.) Additionally, plaintiff Tammy Hawkins brings a loss of consortium claim and both plaintiffs assert a claim for punitive damages.

There is no precise description of the extent of Vincent Hawkins' injuries, other than that they are permanent.  Without this information, and without any additional evidence from defendant, the court is unable to determine whether the amount in controversy requirement is satisfied.  Although plaintiffs allege a variety of claims, including a punitive damages claim, mere numerosity of claims is insufficient to establish that the amount in controversy requirement is satisfied.  The court cannot determine with legal certainty "that, if plaintiff[s] prevail[] on liability, an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [$75,000]."  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994).  Defendant has not met its burden of showing that diversity jurisdiction exists.  Therefore, this case also must be remanded for the second and independent reason that the amount in controversy requirement has not been satisfied.

## IV.    Costs on Remand

In its motion seeking remand, plaintiffs seek an order requiring defendant to pay their just costs and actual expenses, including attorney's fees, incurred as a result of this removal.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  However, expenses and attorney's fees may only

36

be awarded on a motion to remand "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

The decision of whether to award fees is a difficult one, because the court does not consider the unserved forum defendant removal argument very compelling. However, the fact that other federal district courts have accepted defendant's argument, coupled with the fact that the argument has never been raised in this district, would arguably lead an objective person to think that such an argument was at least reasonable. Moreover, it was not objectively unreasonable to argue that plaintiffs' complaint satisfied the amount in controversy. The court will thus deny plaintiffs' request for costs and expenses.

For the foregoing reasons, plaintiffs' "Motion to Remand"[6]  is hereby **GRANTED**.  This matter is hereby **REMANDED** to the Superior Court of Hall County.  Plaintiffs' request for just costs and expenses is hereby **DENIED**.  The clerk

is hereby **DIRECTED** to forward a copy of this order to the Clerk of the Superior

Court of Hall County.

      **IT IS SO ORDERED**, this 19th day of May, 2011.


          s/*William C. O'Kelley*
          WILLIAM C. O'KELLEY
          Senior United States District Judge